# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

N.º 07-CV-3567 (JFB) (AKT)

_____

CHERON DINKINS,

Plaintiff,

VERSUS

SUFFOLK TRANSPORTATION SERVS.,

Defendant.

_____

MEMORANDUM AND ORDER
February 9, 2009

_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Cheron Dinkins (hereinafter, "plaintiff" or "Dinkins") brings this action alleging unlawful termination based on gender, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against his former employer Suffolk Transportation Services (hereinafter, "defendant," "STS" or the "Company"). Specifically, plaintiff, who is male and was a bus driver for STS, asserts that he was terminated for violating Company rules while no disciplinary action was taken against similarly situated female bus drivers. Defendant now moves for summary judgment. For the following reasons, defendant's motion for summary judgment is denied.

## I. BACKGROUND

### A. The Facts

The facts described below are taken from the parties' depositions, affidavits, exhibits and the parties' Local Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 54-55 (2d Cir. 2005).

Defendant provides transportation to 40,000 school children and additional disabled adult passengers. (Defendant's Local Rule

56.1 Statement of Facts ("Def.'s 56.1") ¶ 1.)[1] Plaintiff was employed by defendant as a bus driver from approximately October 1994 to March 20, 2006. (*Id.* ¶ 2.) During his nearly twelve years of employment with defendant, plaintiff was disqualified from driving for at least one school district, got into at least one fault motor vehicle accident, was the subject of complaints by parents about plaintiff's driving and was the subject of complaints by a school district regarding his lack of cooperation with teachers. (*Id.* ¶¶ 39, 97, 114.) A disciplinary hearing was held in 2004 regarding plaintiff's record of lateness. (*Id.* ¶ 98.) Around that time, plaintiff was given a "final warning." (*Id.* ¶ 98.) Plaintiff asserts that "any lateness issues brought to [his] attention were ultimately corrected years prior to [his] unlawful termination," that "one (1) at fault motor vehicle accident in 2001/2002 is certainly not excessive over a twelve year period," and that "it is not uncommon for a bus driver to receive a complaint from a school district customer or parent . . . [and] any complaints lodged against [him] were minimal in nature." (Plaintiff's Aff. ¶¶ 5-7 (emphases in original).) On June 1, 2005, defendant awarded plaintiff a certificate "In Recognition of Distinguished Achievement of Ten (10) Years of Outstanding Service." (Plaintiff's Aff. ¶ 9; Plaintiff's Memorandum of Law, Ex. A.)

Plaintiff's supervisors during his employment with defendant were Barbara Tully ("Tully") and Leonila Alarcon ("Alarcon") (collectively, the "Supervisors"). (Def.'s 56.1 ¶ 16.) Tully and Alarcon also supervised female bus drivers Karla Chica

("Chica") and Isaura Flores ("Flores"). (Def.'s 56.1 ¶ 16.)

On March 20, 2006, plaintiff dropped two students, Cassandra Hopkins ("Hopkins") and her friend, off at an undesignated stop. (Def.'s 56.1 ¶ 11.) Plaintiff alleges that this was an emergency stop because the student had to get to a medical appointment. Hopkins avers that she told plaintiff "that [she] considered this medical appointment an emergency in that if [she] was late for the appointment [she] might miss the physician and/or might not be seen by the physician that day." (Hopkins Aff. ¶ 7.) It is disputed whether this was a violation of Company policy, as plaintiff alleges that this action was in response to an "emergency condition" and that the "Suffolk Transportation Manual allows bus drivers to use their own judgment as a first course of action in determining an emergency (Rule 13 (gg) exhibit B)." (Plaintiff's Local Rule 56.1 Statement of Facts ("Pltf.'s 56.1") ¶¶ 4-5.) Defendant claims that plaintiff's action did violate Company policy. (Def.'s 56.1 ¶ 11.) The rule cited by plaintiff – Rule 13 (gg) – also states that, in such a situation, the driver should "[n]otify the Dispatcher immediately either by radio or phone." (Plaintiff's Memorandum of Law, Exhibit B.) Plaintiff alleges that such notification "was not necessary due to the fact that within minutes after discharging the students Supervisor Barbara Tully (who had been following [plaintiff] without [his] knowledge) phoned [him] on [his] cell phone and acknowledged that she was aware of said discharge of the students." (Plaintiff's Aff. ¶ 14 (emphasis in original).) The Supervisors assert that plaintiff was fired because "of a prior disciplinary record, culminating in an egregious violation of Suffolk Transportation policy and rules when he dropped a student

---

[1] Where only one party's Rule 56.1 statement is cited, the opposing party does not dispute that fact or has offered no evidence to controvert that fact.

passenger off his bus while he was stopped at a red light." (Tully Aff. ¶ 4; Alarcon Aff. ¶ 4.)

The student at issue, Hopkins, also states that, during the school year of September 2007 through June 2008, a female bus driver allowed Hopkins to get off the bus "at locations not along her route," approximately two or three times per month. (Hopkins Aff. ¶ 10.) Hopkins further alleges that "[n]one of these drop-offs were emergency in nature," but, to Hopkins' knowledge, "the female driver was never terminated and still works for Suffolk Transportation Services, Inc. as a school bus operator." (*Id.*) (emphasis in original.) Hopkins further states the following: "[P]rior to September 2005, or on or about the school year of September 2001 through June 2003 (two school years) the same female bus driver would transport both me, her two daughters, and their two friends to and from school every day for two years, even though none of us were authorized to be on the bus she operated. The reason we were not authorized to be on her bus was because we were considered 'walkers' and were not to be transported by bus. Nevertheless, for those two years I was picked up daily at the female drivers [sic] home, and let off daily at the female drivers [sic] home. To the best of my knowledge, this female driver was never disciplined because this activity continued unabated for two (2) full school years." (Hopkins Aff. ¶ 11 (emphasis in original).) Plaintiff asserts that "[t]ransporting and/or carrying unauthorized passengers on a school bus (such as a driver transporting and or carrying their own children on a school bus) is a serious violation of the defendant's safety policies and procedures" . . . and "is also a serious violation as it relates to defendant's insurance carrier." (Pltf.'s 56.1 ¶¶ 11-12.)

Plaintiff further attests that he "personally observed, from September 2005 through March 20, 2006 two female drivers (Karla Chica and Isaura Flores) bring their own children on their bus routes in violation of Company policy and in clear view of their two female supervisors Barbara Tully and Leonila Alacorn." (Plaintiff's Aff. ¶ 18.) Plaintiff further states that it was "very clear" that the supervisors observed this because the buses were loaded right in front of the supervisors's trailer and, most of the time, "Tully and Alacorn were outside the trailer and observing all drivers both entering the yard, parking their cars, and boarding the buses." (Plaintiff's Aff. ¶ 19.) The Supervisors claim that they have never observed Chica or Flores violating any Company policy or rule. (Alarcon Aff. ¶8; Tully Aff. ¶ 8.) The Supervisors further state that no such violations were ever brought to their attention. (Alarcon Aff. ¶ 9; Tully Aff. ¶ 9.)

Plaintiff asserts that "female drivers can repeatedly commit these violations with impunity and the only time I let a student off at a location other than her usual stop, based upon an emergency condition, I am terminated." (Plaintiff's Aff. ¶ 21 (emphasis in original).) He alleges that his termination was based on gender discrimination. In fact, plaintiff alleges that a female driver has "never [been] terminated for discharging a student at a location other than the student's usual bus stop." (Pltf.'s 56.1 ¶ 15 (emphasis in original).) Plaintiff alleges that his review of "approximately fifteen (15) female drivers terminated by defendant on or about June 25, 2002 through on or about September 11, 2006" indicated that these drivers were terminated for more serious offenses, such as "failing the road test. . . failing drug/alcohol tests . . ." leaving a sleeping child on a bus,

and "putting tape over a child's mouth." (Pltf's 56.1 ¶ 14.) Defendant claims that it has "similarly terminated the employment of female employees who have violated [its] safety rules and policies." (DiDomenico Aff. ¶ 7.)

## B. Procedural History

Plaintiff filed a complaint of discrimination with the New York State Division of Human Rights (NYSDHR) and the Equal Employment Opportunity Commission (EEOC) on January 9, 2007, alleging that the defendant discriminated against him on the basis of gender. On May 25, 2007, the EEOC issued a "Right to Sue" letter.

Plaintiff filed a complaint in this action on August 22, 2007, alleging employment discrimination under Title VII on the basis of gender. On November 13, 2007, defendant filed an answer to plaintiff's complaint. On December 5, 2008, defendant filed a motion for summary judgment. Plaintiff filed his opposition on January 5, 2009. Defendant filed a reply on January 15, 2009. Oral argument was held on February 6, 2009. The Court has considered all of the parties' submissions.

## II. SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);

*Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v.*

*Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g. Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. LEGAL STANDARD FOR DISCRIMINATION CASES

Plaintiff brought this act against STS for allegedly discriminating against him on the basis of gender in violation of Title VII. Title VII provides that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 USCS § 2000e-2.

Because plaintiff presents no direct evidence of discriminatory treatment based on his gender, the Court reviews his claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of pregnancy discrimination under Title VII, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*,

375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802))). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

IV. GENDER DISCRIMINATION CLAIM

At the outset, the Court finds that plaintiff has made out the *prima facie* case required by *McDonnell Douglas,* based upon, as discussed more fully below in connection with prong three, plaintiff's membership in the protected class, as well as evidence that similarly-situated female employees were not terminated, despite the same Company policy violations for which plaintiff was terminated. In response, defendant has established legitimate, non-discriminatory reasons for terminating plaintiff. Specifically, defendant argues that plaintiff was terminated because he violated Company policy by dropping a student off at an unauthorized stop, and that, prior to this incident, plaintiff had been warned that his standing was in jeopardy as a result of lateness and prior complaints. Defendant also argues that it was not aware of similarly situated female employees who were treated differently. Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find gender discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Tomney v. Int'l Ctr. for the*

*Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 520 (S.D.N.Y.), *aff'd mem.*, 201 F.3d 432 (2d Cir. 1999); *Lapsley v. Columbia Univ*, 999 F. Supp. 506, 515 (S.D.N.Y. 1998).

In response to defendant's motion for summary judgment, plaintiff points to several pieces of evidence in support of his argument that a reasonable jury could find that defendant's proffered non-discriminatory reasons for the termination were a pretext for gender discrimination. First, plaintiff argues that the incident for which he was terminated took place under emergency circumstances, and, as such, plaintiff was adhering to Company rules by following his best judgment as to how to proceed. Next, plaintiff argues that, while he did have some complaints and disciplinary actions against him during his twelve years as an employee for defendant, he was still in good standing and had just recently received commendation for ten years of outstanding service. He asserts that the number of demerits against him is typical for the length of time that he worked for defendant. Further, plaintiff argues that many female employees violated Company policies in a much more egregious manner than plaintiff, that defendant was aware of these violations, and that defendant took no action against these female employees. Specifically, plaintiff points to his evidence that two female bus drivers, Chica and Flores, routinely transported unauthorized passengers, in full view of their supervisors, in violation of Company policy, with impunity. Additionally, plaintiff includes an affidavit from a student that alleges that a female bus driver routinely dropped her off at unauthorized stops two to three times a month

over a two year period without sustaining any disciplinary action. That same student also asserts that a female driver permitted her and other students to ride the bus every day for two years even though they were "walkers" and should not have been transported by bus.

The Court recognizes that the fact that an employee disagrees with an employer's reasons for termination, or even has evidence that the decision was objectively incorrect, does not demonstrate, by itself, that the employer's proffered reasons are a pretext for termination. *See, e.g., Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 761 (8th Cir. 1998) (stating that "the relevant inquiry was whether [plaintiff] created a genuine issue of material fact as to whether her discharge was gender-based and not whether her termination was reasonable" and noting that "[i]t is not the task of this court to determine whether [the investigator's] investigation was sufficiently thorough or fair"). However, having carefully examined the evidence contained in the record, the Court concludes that, when viewed as a whole and in the light most favorable to plaintiff, the evidence creates genuine issues of material fact as to whether defendant's stated reasons for terminating plaintiff were pretextual, and whether gender was a factor in the termination decision.

Defendant argues that the female employees plaintiff references are not similarly situated and thus, such evidence cannot be used as a matter of law to support plaintiff's *prima facie* case. The Court disagrees and finds that there is a genuine issue of fact on that issue that precludes summary judgment. It is well-settled that a plaintiff can raise an inference of discrimination by showing disparate treatment – namely, that a similarly situated employee

outside the protected group received more favorable treatment. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). The law does not require the employees to be similarly situated in all respects, but rather requires that they be similarly situated in all *material* respects. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an *identically* situated employee."); *accord Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997). The Second Circuit has further defined what the term "all material respects" means in this context:

> What constitutes "all material respects". . . varies somewhat from case to case and, as we recognized in *Norville,* must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness . . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical . . . . The determination that two acts are of comparable seriousness requires – in addition to an examination of the acts – an examination of the context and surrounding circumstances in which those acts are evaluated.

*Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citations and quotations omitted).

In the instant case, plaintiff is comparing himself to female employees who share the same workplace standards – they were bus drivers for the same employer and at least some of them were supervised by the same individuals as plaintiff, Tully and Alacorn. In terms of the conduct, there is a genuine issue of material fact as to whether the female bus drivers are similarly situated. Plaintiff has provided a sworn statement that there are female drivers who violated Company policy (including the policy plaintiff was terminated for violating), on a regular basis, in plain view of the Supervisors, and yet experienced no adverse employment actions whatsoever.[2] Further, plaintiff asserts that female drivers, who were terminated around the same time as plaintiff, were all terminated for conduct much more egregious than plaintiff's. Defendant also argues that it was unaware of any female drivers regularly violating the policy that plaintiff was terminated for

---

[2] At oral argument, defendant's counsel suggested that, with respect to the alleged conduct of the female bus drivers regarding having their own children on the bus, it is not clear that such conduct is a violation of Company safety policy. However, he conceded that picking up and dropping off students, such as "walkers," who were not authorized bus passengers, would be a violation of policy if it occurred. In any event, it is clear that these issues regarding whether these female bus drivers violated policy and, if so, the seriousness of such violations as compared to plaintiff's conduct (including past disciplinary issues involving plaintiff) are all disputed issues of material fact that a jury needs to resolve under the circumstances of this case.

violating, but this merely highlights the existence of a genuine issue as to a material fact. Specifically, among other things, plaintiff has provided a sworn statement that the violations by the female bus drivers occurred in plain view of the supervisors. Similarly, a student provided a sworn statement that every day for two years, a female bus driver would transport her, and the driver's daughters and two of their friends, to and from school even though none were authorized to be on the bus she operated. Under these circumstances, the Court cannot conclude that no reasonable jury could find the similarly situated requirement was met. *See Graham*, 230 F.3d at 39 ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."); *see also Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (same); s*ee also Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) ("[i]t is well established that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'") (quoting *Fischl v. Armitage*, 128 F.3d 50, 55-56 (2d Cir. 1997)). In short, the Court concludes that material issues of fact exist as to plaintiff's alleged disparate treatment, including whether the female drivers to whom plaintiff points were similarly situated. Moreover, viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, the Court cannot rule as a matter of law that no reasonable jury could infer that the defendant's actions were motivated by gender. Accordingly, the evidence is sufficient for plaintiff to survive defendant's summary judgment motion.

IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 9, 2009
Central Islip, New York

* * *

The attorney for plaintiff is Glen Alexander Suarez, Esq., of Glen A. Suarez, P.C., 50 Elm Street, Huntington, New York 11743. The attorney for the defendant is Paul L. Dashefsky, Esq., 317 Middle Country Road, Smithtown, New York 11787.